IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OLGA M. MADERA COLÓN,

   Plaintiff,

      v.                                              CIVIL NO.: 19-1027 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

**OPINION AND ORDER**

      Pending before the court is Ms. Olga M. Madera Colón's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 15. Plaintiff alleges that the administrative law judge's residual functional capacity determination is not supported by substantial evidence. It is also claimed by Plaintiff, among other allegations, that the administrative law judge erred at step five of the sequential process.

**I.    Procedural and Factual Background**

      On November 3, 2014, Plaintiff filed an application for Social Security benefits alleging that on July 31, 2012 ("the onset date"), she became unable to work due to disability. Tr. 19.[1] Prior to the onset date, Plaintiff worked as a meat packager. Tr. 25. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. Tr. 21. Plaintiff's disability claim was denied on February 18, 2015, and upon reconsideration. Tr. 19. Thereafter, Plaintiff requested a hearing which was held on June 5, 2017 before Administrative Law Judge Victoria Ferrer ("the ALJ"). Tr. 54-82. On August 3, 2017, the ALJ issued a written decision

---

[1] "Tr." refers to the transcript of the record of proceedings.

finding that Plaintiff was not disabled. Tr. 27. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-4. Plaintiff filed a complaint on January 10, 2019. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15, 16.

I.     Legal Standard

    A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. Tr. 21. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, epilepsy, sleep apnea, and bilateral carpal tunnel syndrome. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that she could sit for six hours in an eight hour workday or stand and walk six hours during an eight-hour workday. In addition, she was able to perform frequent handling bilaterally. [Plaintiff] had to avoid exposure to unprotected heights and even moderate exposure to hazards.

Tr. 23. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a meat packager. Tr. 25. At step five, when considering Plaintiff's vocational factors, the ALJ found that Plaintiff was a younger individual who had at least a high school education and was able to communicate in English. Id. The ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 26. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: lens matcher, wire preparation machine

tender, and inspector and hand packager. Tr. 26, 80-81. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 26-27.

## III.    Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on three grounds. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 15, at 7-11. Next, it is claimed by Plaintiff that the ALJ erred in not finding her allegations regarding her pain and the severity of her physical functional limitations credible. Id. at 12-13. Lastly, Plaintiff alleges that the ALJ erred at step five in the sequential process by finding that there was work existing in significant numbers in the economy that she could perform. Id. at 14-16.

### A. The ALJ's RFC Determination

Plaintiff claims that the ALJ erred in determining that she had the RFC to perform light work. ECF No. 15, at 7-11. Plaintiff specifically argues that the ALJ did not properly consider progress notes from the Asomante Medical Group and erred in assigning great weight to the opinions provided by the state agency consultants. Id. at 8, 10. The ALJ is responsible for formulating a claimant's RFC. See 20 C.F.R. § 404.1546(c). "In making an RFC assessment, the ALJ must consider all relevant evidence in the record, including the opinions and statements by all medical sources." Sánchez-Velázquez v. Comm'r of Soc. Sec., Civ. No. 14-1723, 2016 WL 917913, at *3 (D.P.R. Mar. 10, 2016) (citations omitted); see 20 C.F.R. § 404.1545(a)(3). The claimant, however, has the burden of providing evidence to establish how his impairments limit his RFC. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

In her decision, the ALJ specifically considered medical evidence from Asomante Medical Group. Tr. 24. A bone density test in February 2014 showed progressing osteopenia, but

no fracture risk was assessed and it was recommended that Plaintiff should take calcium and Vitamin D supplements. Tr. 684. An abdominal sonogram in May 2014 found hepatic steatosis without significant hepatomegaly. Tr. 24, 666. The ALJ noted that a July 2014 radiological study of the knees revealed marginal osteophytes, but no acute fractures or joint effusion, no suspicious sclerotic or osseous destructive lesion, and normal joint spaces. Tr. 24, 656, 661. Plaintiff's bilateral hand and wrist x-rays in July 2014 were also normal. Tr. 24, 652-55. The ALJ also noted that thoracic spine x-rays from November 2014, after the relevant period, were normal and no acute or suspicious abnormality was identified. Tr. 24, 635; see Casull v. Comm'r of Soc. Sec., Civ. No. 16-1620, 2017 WL 5462185, at *4 (D.P.R. Nov. 14, 2017) (explaining that the ALJ should still consider "medical evidence after the date last insured if it shed[s] light on whether Plaintiff's impairments were severe prior to date last insured."). It was also noted that radiological studies of the cervical spine from November 2014 found no fracture or malalignment and that the straightening of normal lordosis may be related to muscle spasm. Tr. 24, 639-40. Thus, the record reflects that the ALJ specifically considered treatment notes from Asomante Medical Group in the RFC determination. See Rodríguez v. Sec'y of Health and Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. 1990) ("An ALJ is not required to expressly refer to each document in the record, piece-by-piece").

The ALJ also considered other evidence in the RFC determination. Plaintiff was referred to treating rheumatologist Dr. Roberto Álvarez Swihart ("Dr. Álvarez") who examined Plaintiff in March 2014 after she complained of pain worsened by walking, standing, and lifting. Tr. 750. The physical examination conducted by Dr. Álvarez revealed 8/18 tender points but the musculoskeletal system appeared normal. Tr. 750-53. Plaintiff had equal grip, symmetrical

7

strength, normal reflexes, and normal neurological functioning. Id. Dr. Álvarez diagnosed Plaintiff with osteoarthritis, joint effusion of the lower leg, and carpal tunnel syndrome. Tr. 752.

In August 2014, treating physiatrist Dr. Marie C. Lugo Cruz ("Dr. Lugo") conducted an electromyogram which exhibited normal findings, and nerve conduction studies revealed the presence of bilateral carpal tunnel syndrome. Tr. 538-39. Dr. Lugo's recommended treatment consisted of physical therapy and the use of bilateral wrist braces. Id. On October 31, 2014, after the date last insured, Dr. Álvarez's subsequent treatment notes revealed 12/18 tender points and additional diagnoses of rheumatism and fibrositis, and generalized convulsive epilepsy without mention of intractable seizures. Tr. 754-57. Plaintiff was treated with oral medications and joint injections with no need for special procedures or hospitalizations. Id.

In December 2014, after the date last insured, Plaintiff presented to Dr. Lugo with tenderness of both wrists and painful forced hand grip. Tr. 629. Treatment remained conservative as Dr. Lugo recommended wrist braces and discontinued physical therapy. Id. The ALJ also noted that treating pneumologist Dr. George Fahed ("Dr. Fahed") diagnosed Plaintiff with moderate-to-severe obstruction sleep apnea in November 2014, after the date last insured. Tr. 24-25, 536. Plaintiff was prescribed the use of a continuous positive airway pressure machine. Tr. 25, 536.

Plaintiff claims that the ALJ improperly afforded great weight to the opinions of the state agency physicians. ECF No. 15, at 10-11. The ALJ may give great weight to the opinion of a state agency physician if it is "based on a review of a complete case record and is consistent with and supported by the preponderance of medical and other evidence in the record." Delgado-Benítez v. Astrue, Civ. No. 10-2065, 2012 WL 1110157, at *8 (D.P.R. Mar. 30, 2012) (citing Social Security Ruling 96–6p, 1996 WL 374180, at *3). "Therefore, under the right

8

circumstances state agency physician opinions may constitute the substantial evidence needed to support the ALJ's findings." Id. (citing Rodríguez v. Secy' of Health & Human Servs., 647 F.2d 218, 223 (1st Cir. 1981)).

In the case at bar, the ALJ afforded great weight to state agency consultant internists Dr. Rafael Queipo ("Dr. Queipo") and Dr. Ulises Meléndez ("Dr. Meléndez"). Tr. 25. Dr. Queipo reviewed the record in February 2015 and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could sit, stand, and walk each for about six hours in an eight-hour workday. Tr. 361-62. Dr. Queipo also opined that Plaintiff could handle frequently with both arms, and that she would need to avoid moderate exposure to hazards. Tr. 362. Dr. Queipo noted that no atrophy, involuntary movements, or asymmetry was reported regarding Plaintiff's carpal tunnel syndrome. Tr. 363. It was also noted by Dr. Queipo that Plaintiff's sleep apnea was not accompanied by any reported complications or severe symptoms. Tr. 363.

Dr. Meléndez reviewed the record upon reconsideration in August 2015 and opined that Plaintiff could occasionally lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. Tr. 373-74. Dr. Meléndez further assessed that Plaintiff had a manipulative restriction of handling frequently and an environmental limitation of avoiding even moderate exposure to hazards. Tr. 374.

The ALJ's decision to assign great weight to the opinions of Dr. Queipo and Dr. Mélendez is supported by substantial evidence because their opinions are consistent with the medical evidence in the record. See Delgado-Benítez, 2012 WL 1110157, at *8. Thus, the ALJ's RFC determination is supported by substantial evidence. See Evangelista v. Sec'y of Health &

Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("We must affirm the Secretary's [determination], even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

### B. The ALJ's Rejection of Plaintiff's Allegations Regarding the Severity of her Physical Functional Limitations

Next, Plaintiff argues that the ALJ erred in finding that her allegations regarding the severity of her physical functional limitations and pain were not consistent with the medical evidence. ECF No. 15, at 11-13; Tr. 23-24. In her function report, Plaintiff alleges that she is unable to perform any household chores, walk for more than five minutes, and "need[s] help for everything." ECF No. 15, at 12-13; Tr. 98-102. Under the regulations, the ALJ must consider a claimant's symptoms in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. at § 404.1529(b). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and consider whether the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record documenting a claimant's limited capacity for work. Id. at § 404.1529(c).

In the case at hand, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 23. Then, it was determined by the ALJ that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 23-24. In her decision, the ALJ noted that Plaintiff's thoracic spine x-rays were normal and that radiological studies of the spine may be related to muscle spasm. Tr. 24, 635, 639. The ALJ also noted that radiological studies of the knees revealed marginal osteophytes, but

no acute fracture or joint effusion, no suspicious sclerotic or osseous destructive lesion, and normal joint spaces. Tr. 24, 656, 661. While a physical examination by Dr. Álvarez revealed 12/18 tender points, the musculoskeletal system appeared normal, grips were equal, and strength was symmetrical. Tr. 24, 755. The ALJ noted that Dr. Álvarez treated Plaintiff conservatively with oral medication and joint injections. Tr. 24, 752-61. Furthermore, it was noted by the ALJ that Dr. Lugo also treated Plaintiff's bilateral carpal tunnel syndrome conservatively with wrist braces and physical therapy. Tr. 24, 538-39. Thus, the ALJ's decision to disregard Plaintiff's allegations regarding the severity of her physical limitations is supported by substantial evidence because her allegations were not consistent with the record medical evidence.

Plaintiff also claims that the ALJ erred by not including a thorough discussion of the Avery factors in her decision. ECF No. 15, at 12-14. In evaluating a claimant's subjective complaints of pain, the ALJ must consider the Avery factors. See Vargas-López v. Comm'r of Soc. Sec., 510 F. Supp. 2d 174, 180 (D.P.R. 2007). The Avery factors include:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986). The ALJ, however, "need not slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding." Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citations omitted).

In the case at bar, "[a]lthough the ALJ did not mechanically enumerate each factor, [her] opinion and the transcript of the hearing show a full consideration of the factors." González v. Comm'r of Soc. Sec., Civ. No. 14-1669, 2016 WL 1171511, at *3 (D.P.R. Mar. 24, 2016); see

Mercado v. Comm'r of Soc. Sec., 767 F. Supp. 2d 278, 285 (D.P.R. 2010) ("Generally, a failure to address all of the Avery factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing."). Regarding the first factor, nature and location of alleged pain, Plaintiff testified at the hearing that she had pain in her back, knees, and hips. Tr. 64, 67, 71. The ALJ also noted in her decision that Plaintiff's physical examinations revealed joint pain and 8/18 and 12/18 tender points. Tr. 24, 751, 755. With regard to the second factor, precipitating and aggravating factors, the ALJ noted that Plaintiff told Dr. Álvarez that her pain worsened by walking, standing, and lifting, but improved with rest. Tr. 24, 750. At the hearing, Plaintiff testified that she cannot sweep or mop or stand for long periods because of the pain. Tr. 64, 67, 72. The third factor concerning Plaintiff's pain medication was also considered by the ALJ who specifically asked Plaintiff about her medications at the hearing. Tr. 71. Plaintiff testified that she is taking Relafen and Neurontin. Id. It was also testified by Plaintiff that she has taken pain medication for several years and it has been prescribed in increasing dosages. Id.

Regarding the fourth factor, treatment other than medication, it was noted in the ALJ's decision that Dr. Lugo treated Plaintiff's painful forced hand grip stemming from her carpal tunnel syndrome with physical therapy and wrist braces. Tr. 24, 538-40. The ALJ also considered the fifth factor, functional limitations, as Plaintiff testified at the hearing that she cannot lift ten-pound boxes. Tr. 67, 76. Plaintiff also testified that she can only walk short distances for 5 to 10 minutes and that she can only sit down for 15 to 20 minutes without having to alternate positions because it hurts her hips and back. Tr. 71, 72. Regarding the sixth factor, activities of daily living, Plaintiff testified that she does not cook and that she typically spends her day "[r]esting, lying on the sofa, not doing anything." Tr. 67-68, 72. Thus, contrary to

12

Plaintiff's argument, the ALJ considered the Avery factors in both the hearing and her decision. See Mercado, 767 F. Supp. 2d at 285.

### C. The ALJ's Step Five Determination

Plaintiff alleges that the ALJ erred at step five in the sequential process by finding that there was work that she could perform existing in significant numbers in the national economy. ECF No. 15, at 14-16. At step five, the ALJ evaluates whether a claimant's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The vocational factor of education includes whether a claimant is illiterate and can communicate in English. See 20 C.F.R. § 416.964; Noora D v. Berryhill, Civ. No. 18-144, 2019 WL 2173433, at *2-3 (D. Me. May 19, 2019).

First, Plaintiff claims that the ALJ's finding that she can communicate in English is not supported by substantial evidence. ECF No. 15, at 14-15. In evaluating Plaintiff's education, the ALJ concluded without any elaboration that Plaintiff "has at least a high school education and is able to communicate in English." Tr. 25. In her January 2015 disability report, Plaintiff indicated that she could speak and understand English. Tr. 471. Plaintiff, however, also indicated in the same report that she cannot read and understand English and that she cannot write more than her own name in English. Tr. 471. In February 2015, a disability examiner asked Plaintiff whether she is able to read, write, speak, and understand the English language to which she replied that she was unable to do so. Tr. 359.

At the hearing, Plaintiff's attorney stated that Plaintiff does not speak English. Tr. 58. While it is not explicit from the hearing transcript whether Plaintiff was assisted by an interpreter, the fact that Plaintiff testified after her attorney claimed that she did not speak

13

English suggests that she did not testify in English at the hearing. Furthermore, the transcript of the hearing is certified by Ms. Maria Ortiz-Cichocki as being a true and complete "translation / transcription of the testimony recorded at the hearing" which also suggests that Plaintiff was assisted by an interpreter. Tr. 82. The ALJ did not support her determination that Plaintiff is able to communicate in English and did not reconcile the pertinent conflicting evidence. Thus, the ALJ's determination that Plaintiff can communicate in English is not supported by substantial evidence. See Mamata v. Colvin, Civ. No. 15-175, 2016 WL 164994, at *4 (D.N.H. Jan. 14, 2016) ("Courts have thus consistently ordered a remand where, as here, the ALJ provides no reasoned basis for her conclusion regarding a claimant's English ability."); Delgado v. Barnhart, 305 F. Supp. 2d 704, 716 (S.D. Tex. 2004) ("The ALJ's cumulative failures to make and/or document the relevant inquiries regarding Plaintiff's language abilities deprives his finding on this matter of substantial supporting evidence.").

Plaintiff argues that because the ALJ's determination regarding her English communication skills is not supported by substantial evidence, the ALJ erred in applying Medical Vocational Rule 202.20 and should have applied Medical Vocational Rule 201.17 which would direct a finding of disability. ECF No. 15, at 15. The Medical-Vocational Guidelines ("the Grid") is "a table used at step five of the sequential evaluation process that applies a claimant's vocational factors and her RFC to determine whether she should be found disabled." Vélez Valentín v. Astrue, Civ. No. 11-830, 2013 WL 322520, at *2 (D.P.R. Jan. 28, 2013) (citing 20 C.F.R. pt. 404, subpt. P, App. 2). "However, if the applicant has nonexertional limitations . . . that restrict her ability to perform jobs [she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision." Sánchez Ortiz v. Comm'r of Soc. Sec., 995 F. Supp. 2d 53, 62 (D.P.R. 2014) (citing 20 C.F.R. § 416.969a(d)).

In the case at hand, the ALJ applied Medical Vocational Rule 202.20 which directs a finding of "not disabled" for a younger individual, who has a high school education and is able to communicate in English, whose past relevant work is "unskilled or none," and who can perform the full range of light work. Tr. 26; 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.20. The ALJ, however, found that Plaintiff's ability to perform the requirements of light work was impeded by additional limitations and sought the opinion of a vocational expert ("VE"). Tr. 26. The ALJ's application of Medical Vocational Rule 202.20 was error because the ALJ's finding that Plaintiff can communicate in English is not supported by substantial evidence.

However, Plaintiff's claim that the ALJ should have applied Medical Vocational Rule 201.17 is unfounded because it is premised on her having a RFC for sedentary work. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.17. As stated earlier, the ALJ's RFC determination for light work is supported by substantial evidence.

Even if the ALJ had applied the applicable Medical Vocational Rule 202.16 for an individual unable to speak English with a RFC for light work and the remainder of the vocational profile unchanged, a finding of "not disabled" would still be directed. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.16. Thus, the ALJ's application of Medical Vocational Rule 202.20 constitutes harmless error. See Wilson v. Colvin, Civ. No. 15-435, 2016 WL 4158140, at *6 (N.D. Ala. Aug. 5, 2016); Pritchard v. Colvin, Civ. No. 13-945, 2014 WL 3534987, at *9 (N.D.N.Y. July 17, 2014) ("The court is satisfied that, where there exists another Grid Rule applicable to plaintiff's position which would support the same determination as was made using the wrong rule, harmless error analysis applies.").

Plaintiff also claims that the ALJ provided an improper hypothetical to the VE. ECF No. 15, at 14-16. "The ALJ may rely on the VE's testimony . . . only so long as the VE's testimony is

15

in response to an accurate hypothetical." Ruiz-Feliciano v. Astrue, Civ. No. 10-1996, 2012 WL 290089, at *4 (D.P.R. Jan. 31, 2012). First, Plaintiff argues that the ALJ's hypothetical to the VE was based upon an insufficient RFC. ECF No. 15, at 15-16. As stated earlier, substantial evidence supports the ALJ's RFC determination and Plaintiff cannot rehash her RFC argument at this final step. See Gallant v. Berryhill, Civ. No. 16-308, 2017 WL 2731303, at *7 (D. Me. June 25, 2017).

It is also claimed by Plaintiff that the ALJ's hypothetical to the VE was incomplete because it did not reflect that Plaintiff cannot communicate in English. ECF No. 15, at 14. As stated earlier, the ALJ's determination regarding Plaintiff's English language skills is not supported by substantial evidence. Therefore, the ALJ's hypothetical question posed to the VE was incomplete. See Lorenzo v. Comm'r of Soc. Sec., Civ. No. 10-369, 2011 WL 2681986, at *6-9 (M.D. Fla. July 7, 2011). The Commissioner, on the other hand, argues that the VE considered Plaintiff's language limitations because the VE was present at the hearing, and thus, was "well aware that Plaintiff was unable to speak English." ECF No. 16, at 15. The ALJ's error, however, is not nullified by the mere fact that the VE was present at the hearing. See Santiago-Borges v. Berryhill, Civ. No. 17-781, 2018 WL 4520364, at *5 (M.D. Fla. Sept. 21, 2018); Amezcua v. Berryhill, Civ. No. 16-6204, 2017 WL 3253491, at *7 (C.D. Cal. July 31, 2017) (explaining where "the ALJ fails to present hypotheticals to the VE that accurately reflect all of the claimant's relevant characteristics, it does not become the VE's burden to correct the ALJ and utilize characteristics that the VE observes at the hearing.").

Furthermore, the occupations that the VE identified as being able to be performed by Plaintiff, lens matcher (DOT 713.687-030, 1991 WL 679274), wire preparation machine tender (DOT 728.685-010, 1991 WL 679685), and inspector and hand packager (DOT 559.687-074,

1991 WL 683797), all require a level two language proficiency. A level two language proficiency requires, among other things, that a person have a passive vocabulary of 5,000-6,000 words, read at rate of 190-215 words per minute, write compound and complex sentences, and speak clearly with appropriate pauses and verb tense. See DOT, Fourth Edition, Revised 1991, App. C, 1991 WL 688702. The ALJ provided an incomplete hypothetical to the VE, and thus, the step five determination is not supported by substantial evidence.

### IV.     Conclusion

Based on the foregoing analysis, the Commissioner's decision is REVERSED IN PART AND AFFIRMED IN PART. The Commissioner's step five finding was not based on substantial evidence because the ALJ did not properly assess Plaintiff's English communication skills, and thus, the ALJ's hypothetical to the VE was incomplete. Therefore, the Commissioner's decision is VACATED IN PART and the case REMANDED so that the ALJ may determine whether Plaintiff can understand and communicate in English, and assess whether there are jobs in the national economy that Plaintiff can perform. With respect to the ALJ's RFC determination and the ALJ's credibility determinations regarding Plaintiff's allegations about the severity of her physical functional limitations and pain, Plaintiff's arguments are rejected and the Commissioner's decision is hereby AFFIRMED. This remand does not dictate any outcome with regard to the final finding of disability.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of September, 2020.

s/Marcos E. López<br>U.S. Magistrate Judge